# Department of Veterans Affairs

# Memorandum

Date: February 19, 2008

From: Mark Romaneski, Regional Counsel, Region 19

Subj: Paralegal Duties

To: Vanessa Hall

1. As the senior paralegal in Region 19, you are a valuable employee and an important part of the Region 19 team. We cannot accomplish our mission of legal support to VA clients without your contributions. Therefore, I am dedicated to resolving the issues you have recently raised in email to Jeff. My goal is to make the workplace fair and conducive to productivity for all Region 19 employees. That is why in our meetings, after you mentioned that you were under a great deal of stress, I suggested that help was available for you to deal with stress. I still think that you should avail yourself of the help resources such as the Employee Assistance Program, which is there for you.

2. Because of concerns that you raised earlier in the week, Jeff immediately dropped what he was doing and flew, that very day, to Phoenix to meet with you and Dana on Thursday, February 14, 2008. I attended those meetings and I believe that they were productive. We initially met with you and listened to your concerns. Next, we met with you and Dana and laid out the ground rules for assigning work and work processes. We addressed each of your concerns and developed processes that we agreed would be helpful. If, after reflection, you do not believe that these processes, which you agreed to, are helpful, let me know. We can meet again to refine or change them. The important thing is that we follow the procedures that we all agreed to or, if those procedures are not helpful, we meet again to reach a common understanding and agreement.

3. At that meeting, you stated that you wanted a work situation such as you had in Cleveland where you worked independently and did not directly support any particular attorney. Region 19 is smaller than Region 7 and, as a result, we have a different work-flow and structure here. With three paralegals and six medical facilities, each paralegal supports two medical facilities. If we were to structure otherwise, it would require the other two paralegals to support three facilities.

4. On Friday, Dana was not present for work because of military leave. On Thursday evening, Dana assigned you a motion to write. It is due on 3 March and he outlined exactly his expectations as we previously agreed we would do (one of your issues being that when you got a tasking it was not always clear what was expected). On Thursday evening, you told me that you felt that the tasking was insulting because he was going into too much detail on the tasking. I read the tasking (again) and I do not believe that it is in anyway insulting or condescending. I asked Jeff to read it in light of your concerns and his view is the same as mine. The tasking is appropriate and professional. We agreed that the tasking should provide sufficient detail, guidance and direction so that you do not "spin your wheels." It seems clear to me that Dana was handling the tasking exactly as we agreed.

VA FORM
MAR 1993    2105

5. Given the results of our meetings, I was surprised when you emailed Jeff on Friday and told him: "I am overwhelmed! I cannot take on any additional work with a fair expectation of completion. I am getting increasingly concerned about my assigned workload and the increasing support responsibilities." Dana was gone on Friday and the only thing unusual was that it was the filing deadline for the OGE 450 filers. You also stated that you were the "only paralegal here who is providing support to attorneys." Moreover, that "Norma does not support Rona and Maxine in the same way that I support Dana and Bron can be a problem. We have been meeting on issues concerning my support to Dana and Bron, roping off my time, etc. but how does that translate to similarly situated employees? Norma told me that she was told not to make copies and does not make copies; I have to do whatever I am told during the time allocated for such. There is no time allocated in which Norma is expected to perform like task. 100% of her time, by her admission, is devoted to her caseload." (See enclosure).

6. Given your feelings of being overwhelmed and your belief that Norma is not providing sufficient support, I will do what I can to address those concerns. Again, my goal is to ensure that all employees are treated fairly and with dignity and respect.

7. This coming week, we will sit down with Norma and discuss her support to her facilities and the concern that you raised that Norma does not "make copies." I would point out that Norma is the only paralegal that does collection work. One-third of her time is on collections. Neither you nor Bonita spends significant amounts of time on collections. Because of her work on collections, Norma has less time for attorney support. You, on the other hand, are the only paralegal who supports the confidential financial disclosure (CFD) program. Unlike MCCF recovery, this work is cyclical. In other words, a substantial amount of your time now will be devoted to the CFD program but during most of the year, you will spend little time on the program. Of the three paralegals, Bonita spends the most time on "attorney support," followed by you and then Norma. However, in the interest of fairness, we will discuss this matter with Norma.

8. Several times, you have mentioned to me that you believe that making photocopies for attorneys is not a good use of your time. I have no way of knowing how much time you spend on making photocopies. From my perspective, I do not believe that you are excessively tasked to make copies, but this is simply because I rarely see you (or anyone else) at the photocopy machine. Therefore, effective immediately, if an attorney asks you to make copies, you will bring the assignment to me. I intend to log all the copying assignments that you receive. If it is excessive, I will have Jeff assign the copying to someone else.

9. On Thursday, you wrote to Jeff asking him if you should put in for sick leave for the time you missed on Thursday morning given that you worked late on Wednesday evening. I want to remind you of office policy with respect to overtime. Employees may not work overtime for compensation or "comp time" without the express advance approval of the supervisor. I do not expect you to work past your normal end of tour of duty. I know there are times when you have stayed late but I thought it was because you were waiting for a ride home. The office policy and my expectation is that you will not stay beyond the end of your normal tour of duty. If you do stay beyond your tour of duty, you may not take "comp time" without your supervisor's expressed advance approval. The OGC Handbook addresses the overtime rules in Chapter 1.

10. Given that you are feeling overwhelmed and that you cannot accomplish all the tasks that you are assigned, I am terminating your telecommuting arrangement. Effective with the pay period that beginning 16 March (with the first duty day on 17 March), you will work in the

VA FORM
MAR 1993    2105

office and not work from home. Telecommuting is for employees who have a demonstrated ability to work independently and with minimal supervision. I believe that it is necessary to provide you closer supervision to prevent you from being overwhelmed and to ensure that all assignments and taskings are fair. It simply does not meet the operational needs of the office to resolve these issues when you are not in the office. I need to have you present in the office to address these concerns. I will revisit this decision once you have demonstrated an ability to work independently and with minimal supervision and that you are no longer feeling overwhelmed.

11. I have asked HR to assist in finding training for you, especially in the area of stress management and time management. I am not sure what training is available. I think that you would benefit from training in both areas. As an example of why I am concerned about your time management abilities, at 2:24 p.m. on Thursday afternoon you sent a detailed email to Jeff regarding the CFD SOP that you have been drafting. While this SOP is important work, your taking time to work on the SOP when you were already having stress related problems due to issues related to the Friday filing deadline, evidences a shortcoming by you in the area of time management. I will support any training or education efforts to assist you in those areas. In addition, Jeff or I can assist you with prioritizing your tasks.

12. During our meeting on 14 Feb, you mentioned that Dana made "inappropriate" comments and you mentioned to me on Friday evening that Mr. James Pinger was "yelling and screaming" at you. Therefore, I want you to provide two statements, the first pertaining to Dana's inappropriate comments. Please make the statement as specific as possible. In addition, I would like your opinion on why you believe the comments were inappropriate. The examples that you provided during the meeting were that Dana said that he did not believe you should telecommute, that "Phoenix is a predominantly white city," "better you than me," and, "join the club" (in response to seeing that you were working late). The context for these statements is important so please describe the context as well. Second, I would like a statement concerning your conversation with Mr. Pinger. Make this statement as detailed as possible. Specifically address any instances of his failure to treat you with dignity and respect and any instances of his "yelling and screaming."

13. It is important to have open communication in resolving differences in the workplace. While is it not possible for each person to have exactly the same work assignments (for example, Norma does collections, you do not; you do OGE 450 filings, Norma doesn't), I can ensure that each employee is treated with dignity and respect and has every opportunity to realize his or her full potential. I intend to do everything I can to achieve those goals. I hope to have your assistance to ensure that Region 19 is a productive and satisfactory place to work. As one of the senior paralegals in OGC, I am sure that you have valuable suggestions and contributions.

*Mark Romaneski*
Mark Romaneski
Regional Counsel

Enclosure

VA FORM
MAR 1993   2105