

OFFICE OF REGIONAL COUNSEL - REGION 19
DEPARTMENT OF VETERANS AFFAIRS
650 East Indian School Rd., Bldg. 24
Phoenix, Arizona 85012-1839

FOR OFFICIAL USE ONLY

March 12, 2008

Vanessa Hall
Paralegal Specialist
Office of Regional Counsel–Region 19
Department of Veterans Affairs
650 E. Indian School Rd., Bldg. 24
Phoenix, Arizona 85012-1892.

SUBJECT: Reprimand

1. I am reprimanding you for intentional falsification in communications with the Assistant Regional Counsel (ARC) and the Regional Counsel (RC), use of insulting language in the workplace, deliberate failure or unreasonable delay in carrying out assigned tasks, and failing to inform management that you were not going to complete your assigned tasks.

2. On February 27, 2008, after the ARC and RC counseled you about your performance, including concerns about your ability to meet deadlines and complete projects, you showed the RC some papers that you said were two personal letters. You stated that the Legal Assistant was doing personal work using Government resources during duty hours. You said that you found the papers "in the printer" and that the Legal Assistant had printed and left the letters "in the printer." The RC instructed you to send those letters to the ARC for appropriate action.

3. At 10:40 AM, that morning, you sent the letters in a portable document file to the ARC. In your accompanying e-mail, you stated, "[The RC] instructed that I send these letters to you....attached are letters *which were left on the printer*." (emphasis added)

4. The ARC responded within the hour by stating: "Vanessa, thanks for bringing these letters to my attention. Please send me a short statement (it can be *via* reply e-mail), detailing the who, what, when, were, how, and why of the circumstances in which you came upon the letters. Also, please give the original versions of the letters to [the RC]."

5. Your response was at 4:51 PM and you stated, "They are on the shared "P" drive under '[name of employee]'s Letterhead.'"

6. The ARC again instructed you: "Thanks for locating the documents on the shared drive. However, I still need you to send me a short statement (it can be *via* reply e-mail),

detailing the who, what, when, were, how, and why of the circumstances in which you came upon the letters. Also, please give the printed versions of the letters to [the RC]." You never provided that statement, nor did you give the printed versions of the letters to the RC. However, by reply e-mail you stated, *"They are in the shared directory, so I happened upon the letter when I was looking for the electronic form used by [employee's name] for mailing FedEx packages.* She also told me that if I needed labels for the Albuquerque Office, etc., I can find them there also. Since new to this region, I have been pulling documents and samples as needed from other directories on the P drive and coping and saving them under my directory to save time." (emphasis added)

7. On March 5, 2008, during your mid-year performance counseling, the ARC asked you about the discrepancy between whether you found the letters "in the printer" and whether you found them in on the network drive. During that meeting, you admitted that you did not find the letters "on the printer," rather you found the letters while going through the Legal Assistant's folder on the shared network drive. You claimed that you were looking for files for FedEx slips. When asked why you originally said that you found the letters "in the printer," you stated that you "made a mistake" and you got confused because they both began with "P" (the network drive is the P:\ drive).

8. However, since the Legal Assistant has a folder labeled for the FedEx slips and since you were looking in a folder labeled "[name of employee]'s Letterhead," your explanation does not make sense. Further, the employee who wrote the letters was on bereavement leave at the time the letters were allegedly "left on the printer." It is clear that you intentionally provided false information to management in order to deceive management about how you found the letters in an apparent attempt to discredit this employee. If the employee had not been on bereavement leave and thus was not available to have printed the letters, management might have been deceived by your story.

9. On a separate matter, it has come to my attention that you said to another employee in the office, "he [referring to a staff attorney] can just kiss my black ass." This language is insulting, disrespectful and offensive. It has no place in the Federal workplace. This offense is extremely serious as these types of comments are detrimental to office morale and good order.

10. Finally, for the past three weeks, you have had three pending tasks: to provide weekly Confidential Financial Disclosure (CFD) program updates each Monday, to complete a closing brief, and to summarize the facts for a litigation report. These tasks are clearly within the performance standards for a Representational Paralegal Specialist, GS-12. The ARC discussed these tasks with you during your performance counseling on February 27, 2008. You assured the ARC that you would complete the tasks. Despite your assurances, you failed to provide any CFD updates and you failed to provide the factual summary on time. Further, you did not provide management any plausible reason for failing to complete these tasks or to inform management that you were not going to complete them.

11. This past Monday, March 10, 2008, the litigation report factual summary was due. You did not turn it in. Through Monday, you had no time entered in GCLaws on the case since January 17, 2008, indicating that you have not been working on it. On Tuesday morning, March 11, at 9:03 AM, the ARC asked you for a status on the factual summary. At 1:20 PM, you told the ARC, "I was not provided the appropriate tools by [the staff attorney] to undertake the task and that is where the confusion started, so I was floundering as to how to extract the necessary information when you clarified that I should be doing the factual summary instead of a MR chronology." This excuse is disingenuous. The ARC and RC discussed this tasking with you on more than one occasion and you never expressed any concern about the nature of the task or how to accomplish the summary.

12. Shortly thereafter, the ARC sent you two samples for your use as "guides" and said, "Attached are two sample factual workups for you to use as guides. If you still feel that you do not have the appropriate tools to undertake the task, contact me immediately. I do not want you to flounder." At approximately the same time, you and the ARC discussed the matter on the telephone. The ARC summarized that call as follows:

> Thanks for sending me a copy of the tasking per our discussion a few minutes ago. As I understand the tasking, you are to create a factual workup of the case in a narrative format. You are not to merely summarize the medical records. Also in accordance with our discussion, please immediately send me a copy of whatever you have created to date and an estimate of when you will have the factual workup completed.... In the future, I expect you to immediately inform me if there is something that you need to accomplish an assigned task.
> As this tasking was due from you to me yesterday, I expected to be contacted regarding this matter yesterday. Please contact me in the future as soon as you become aware that you will be unable to meet a tasking deadline.

13. At 1:44 PM, you stated, "I am well on my way to completing the project and will have it to you by COB." The ARC again reminded you to send him a "copy of whatever you have at this time." You did not do so. It was not until 5:20 PM that you sent the ARC anything. You stated:

> Attached is the Tort Report. I can put it in final form after [the staff attorney] takes a look at it, etc. None of my cases ever went into litigation in Cleveland, so this was a first for me. So, he may need to review it and provide input as to what else needs to be added. I can put it all together tomorrow. I would suggest providing only the relevant medical records instead of sending all the files (some of them do not have a lot of information and none of which is relevant). Let me know what you want me to do.

14. The factual summary consisted of 146 words and was unacceptably succinct for use in a litigation report. It is clear from your lack of effort that you did not intend to complete

this project and were only giving it minimal attention. Several times over the past three weeks, the ACR offered you help and assistance with any of your taskings. Your failure to complete the tasking on time indicates your disregard of your responsibilities. Your actions constitute deliberate failure or unreasonable delay in carrying out assigned tasks.

15. A copy of this reprimand will be placed in your Official Personnel Folder. You may, if you wish, make a written reply in explanation of your conduct. If you do, it will also be placed in your Official Personnel Folder.

16. This letter may be used in determining an appropriate penalty if further infractions occur.

17. This reprimand may remain in your folder for 3 years or it may be withdrawn and destroyed after 2 years, depending entirely on your future behavior and attitude.

18. If you believe that this reprimand is unjustified, you may appeal the action under the VA grievance procedure. Your grievance must be submitted through your supervisor within 15 days after you receive this reprimand. For further information about the grievance procedure, you may consult Steve Childs, Director, Human Resources & Training Division at (202) 461-7675.

Jeffrey Stacey
Assistant Regional Counsel

FOR OFFICIAL USE ONLY