**THE STROJNIK FIRM LLC**
**Attorneys at Law**
**Suite 1401**
**3030 North Central Avenue**
**Phoenix, Arizona 85012**
**(602) 297-3019**

Peter Kristofer Strojnik AZBN 026082 CABN 242728
strojnik@skplaw.com
Attorney for Plaintiff Vanessa Hall

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| VANESSA HALL, an individual, | NO.  2:09-cv-837-PHX-FJM |
| Plaintiff, | **PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS AND OBJECTIONS TO DEFENDANT'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| ERIC K. SHINESKI, Secretary, United States Department of Veteran Affairs, | |
| Defendant. | |

## I.  INTRODUCTION

Plaintiff Vanessa Hall, by and through undersigned counsel, hereby submits her Controverting Statement of Facts in Opposition to Defendant's Statement of Facts in Support of Its Motion for Summary Judgment.  Plaintiff further submits her Separate Statement of Facts in Support of her Cross-Motion for Summary Judgment.  As a preliminary matter, a significant portion of the paragraphs contained within Defendant's Statement of Facts are not in compliance with LRCiv. 56.1. Many of Defendant's Separate Paragraphs contain several

different Statements of alleged fact, and in many instances the Statements of alleged fact in each paragraph jump from one point to another unrelated point. While combining Separate statements into one paragraph may be permitted if each sentence within the paragraph contained a citation to the record, Defendant's Separate Statement contains paragraphs filled with several sentences of alleged fact; only after the long-winded paragraph does there appear a citation to the record thereby sending Plaintiff on a searching expedition. While Plaintiff cannot move to strike Defendant's Separate Statement, this would be the most opportune time; therefore, Plaintiff objects to each and every paragraph in Defendant's Separate Statement of Facts as each paragraph violated LRCiv 56.1.

LRCiv 56.1 states in relevant part:

> Any party filing a motion for summary judgment shall file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the parties relies in support of the motion. Each material fact shall be set forth in a separately numbered paragraph and shall refer to a specific admissible portion of the record where the fact finds support…

(emphasis supplied). Plaintiff further objects to Defendant's Separate Statement as containing numerous alleged material fact supported by inadmissible hearsay and hearsay within hearsay in violation of Rules 801, 802, Federal Rules of Evidence. Plaintiff makes note of these objections in the applicable Paragraphs, and also admits or denies the substance. Plaintiff states that her admission or denial after any objection stated herein does not waive her particular objection. Additionally, many of Defendant's Separate Statements are based on citations to documents and e-mails that have not been shown to be genuine or authentic in violation of Rule 901, Federal Rules of Evidence.

## II. PLAINTIFF'S CONRTROVERTING STATEMENT OF FACTS AND OBJECTIONS TO DEFENDANT'S SEPARATE STATEMENT OF FACTS

1.  Plaintiff admits that she is an African-American, but she denies that she was born on January 7, 1976.  Plaintiff was born on January 7, 1964.  Vanessa Hall Deposition at 10:3-4 (Exhibit 1).

2.  Plaintiff admits.

3.  Plaintiff admits.

4.  Plaintiff admits that Messrs. Romaneski and Stacey served as Plaintiff's second and first line supervisors during the relevant time frame, respectively.  Plaintiff denies there were six attorneys in the Phoenix officer during the relevant time frame.  There were five attorneys.  Hall.VA.02191-92 (Exhibit 2)[1].  Plaintiff admits there were two paralegals in the Phoenix office during the relevant time frame, but denies there were any employees designated as a "office manager" or a "secretary/receptionist."  *Id*.  Rather, Ms. Maria Worth was the Phoenix office's "legal assistant", and Ms. Rachel Spelghatti was the Phoenix officer's "administrative officer."  *Id*.

**Plaintiff objects to the Section I Heading to the extent that it is intended to be Statement of Fact on the basis that it is not supported by a citation to the record in violation of LRCiv 56.1.**

5.  Plaintiff admits.

6.  Plaintiff admits that she was promoted to GS-12 in or about 2006.  Plaintiff specifies that the effective date of her promotion to GS-12 from a GS-11 was April 16, 2006.  Exhibit 2 at Hall.VA 01130.

7.  Plaintiff admits that her 2006 promotion from GS-11 to GS-12 came after her receipt of a diploma in paralegal studies in 1996, but she objects to any inference that the promotion was due to receipt of the diploma on the basis that such inference is not supported by a citation to the record.  LRCiv. 56.1.  Rather, Plaintiff was promoted as a "result of additional duties and responsibilities."  Exhibit 2 at Hall.Va.01130.  Plaintiff further objects to DSOF ¶7 as it relates to Plaintiff's education level continuing including in her tenure at Region 19 as vague and not supported by the record.  LRCiv. 56.1.  Plaintiff admits that she took four paralegal courses at DOJ's National Advocacy Center, and she admits the remainder.

8.  Plaintiff admits.

9.  Plaintiff admits.

10. Plaintiff objects that her classification as a representational paralegal was "significant" as vague and ambiguous, and as unsupported by a citation to the record.  LRCiv. 56.1.  Plaintiff admits that she was personally aware of two representational paralegals, which includes Plaintiff herself.  Exhibit 1 at 51:13-17.  Plaintiff denies this is an "estimate", but rather her personal knowledge.  *Id*.  However, Plaintiff objects to any inference that there are only two paralegals in the entire OGC as unsupported by a citation to the record.  LRCiv. 56.1.  Plaintiff admits there are four GS-12 paralegals in the OGC system.

---

[1] Exhibit 2 is a list of separate documents.  For the Court's convenience, each citation to Exhibit 2 will be followed by the Bates label, the documents in Exhibit 2 will be organized in the order they are cited in this filing.

11. Plaintiff objects to ¶11 as referring to documents that have not been shown to be genuine or authentic by a citation to deposition testimony or otherwise. FRE 901. Plaintiff further objects to the documents referred to in ¶11 as inadmissible hearsay. FRE 801, 802.

12. Plaintiff admits she testified to the information contained in ¶12, but she denies her testimony fully described her duties as a GS-12 representational paralegal; rather, her testimony described the difference between a program paralegal and a representational paralegal. Exhibit 1 at 50:14-23.

13. Plaintiff objects to the statement that Region 19 attorneys allegedly shared Plaintiff's view of increased abilities of a representational paralegal as unsupported by a citation to the record. LRCiv. 56.1. Plaintiff admits Mr. Stacey testified as stated in ¶13. Plaintiff denies that Mr. Heck is a "trial attorney"; rather, he is a "staff attorney" who handles administrative hearings and other administrative matters, but at no time does Mr. Heck argue or present filings in any court of law for trial, litigation or otherwise. Hall Affidavit at ¶3 (Exhibit 3). Plaintiff further objects to Mr. Heck's testimony as unsupported by the record. Deposition of Dana Heck at 88:7-12 (Exhibit 4).

14. Plaintiff admits that Ms. Kaping was a program paralegal but denies the unsupported inference that Ms. Kaping and Ms. Hall were the only paralegals in Region 19 (they were the only paralegals in the Phoenix office of Region 19). Exhibit 2 at Hall.VA.02190-91. Plaintiff objects to the statement that Ms. Kaping was promoted to GS-11 in 2010 as unsupported by the citation to the record. Deposition of Norma Kaping at at 35:7-10 (Exhibit 5). LRCiv. 56.1. Without waiver of objection, Ms. Kaping

was actually promoted to GS-11 in December 2007, which was approximately one month after Ms. Hall joined Region 19.  Exhibit 3 at ¶4.

15. Plaintiff admits.

16. Plaintiff admits.

17. Plaintiff admits that Ms. Kaping was "funded through a separate stream" but denies that her VISN 18 status had any consequence or effect on what facilities she was permitted to work unless she was a contract employee, which she was not.  *Id*. at ¶5.  As an example, when Plaintiff was first hired in Region 7 as a paralegal specialist, she was funded by VISN 10, but she was permitted to support all facilities including those non-VISN 10 facilities.  *Id*.

18.    Plaintiff objects as Defendant's citations to the record do not support what is alleged as fact.  LRCiv. 56.1.

**Plaintiff objects to the Section II Heading to the extent that it is intended to be Statement of Fact on the basis that it is not supported by a citation to the record in violation of LRCiv 56.1.**

19. Plaintiff admits.

20. Plaintiff denies GCLaws was a "timekeeping" system because VISTA was the OGC "timekeeping" system.  Exhibit 3 at ¶6.  However, GCLaws contains a *time tracking* system which is utilized for tracking time spent on cases, which is similar to what private law firms use to keep track of billable hours and caseloads. *Id*. All official timekeeping records are certified and can be generated from VISTA. *Id*. Records obtained from other sources such as GCLaws are not certified and, therefore, not considered official time records. *Id*.

21. Plaintiff admits that GCLaws requires time spent on administrative tasks and legal assignments be recorded therein, but Plaintiff denies that "types of leave" are recorded in GCLaws; rather, they are recorded in VISTA. *Id*. at ¶7. Although entering "billable" time in GCLaws is required, it is a non-critical (as opposed to critical) factor for an employee's performance reviews. *Id*. In actuality, Plaintiff was not effective at entering her time into GCLaws to the point that management had to remind her to do so on several occasions. Deposition of Jeffrey Stacey at 54:17-24 (Exhibit 6).

22. Plaintiff admits DSOF ¶22, but denies that she was permitted to telecommute three days a *week*, but rather three days a *pay-period* (10 business days). Exhibit 1 at 148:11-25, 149:4-10.

23. Plaintiff admits that a new organizational structure coincided with her arrival to Region 19 but denies Mr. Stacey's alleged intentions vis-à-vis said structure as unsupported by a citation to the record. LRCiv. 56.1. Plaintiff admits that Mr. Heck was assigned to Phoenix medical center, that Mr. Steinmetz was in Mr. Heck's group and was assigned to Reno, and that Ms. Hall was assigned to this two-attorney group as well. However, although Plaintiff admits that Mr. Stacey <u>testified</u> Ms. Hall was assigned to Phoenix because she was a GS-12, this rationale is flawed because when Ms. Hall resigned, she was replaced in the Phoenix group by Ms. Devina Hughes – a GS-5 program paralegal. Deposition of Maxine Romero at 92:13-21; 94:3-8 (Exhibit 7).

24. Plaintiff admits.

25. Plaintiff admits.

26. Plaintiff admits.

27. Plaintiff admits.

28. Plaintiff objects that she allegedly "did not live up to the excitement" as vague and unsupported by a citation to the record. LRCiv. 56.1. Plaintiff admits the time frame and her application for other employment positions, the reason for which was, *inter alia*, a disparity in workload between herself and the other Phoenix paralegal. Exhibit 3 at ¶8. Plaintiff admits the remainder except she never advised anyone that she wanted to primarily work in Washington, D.C. or that she was searching for other employment for family reasons. *Id.*

29. Plaintiff admits her job applications coincided with her complaints about a disparity in workload. Plaintiff objects to the e-mails and their content because Defendant did not show it is genuine or authentic by a citation to deposition testimony or otherwise. FRE 901. Without waiver of this objection, Plaintiff denies that she could not handle her workload; a close review of the e-mail demonstrates that Plaintiff commented on the workload because she was doing work that was assigned to staff attorneys Steinmetz and Heck as well as her own caseload. Exhibit 3 at ¶9. Defendant's Ex. Nos. 10-11.

30. Plaintiff objects to the content of the e-mail in DSOF ¶30 because Defendant did not demonstrate that it is genuine or authentic by a citation to deposition testimony or otherwise. FRE 901.

31. Plaintiff objects to the content of the e-mail in DSOF ¶31 because Defendant did not demonstrate that it is genuine or authentic by a citation to deposition testimony or otherwise. FRE 901. Plaintiff further objects to the e-mail as containing inadmissible hearsay and double hearsay. FRE 801, 802. Without waiver of these objections,

Plaintiff does admit that her GCLaws entries did <u>not</u> demonstrate that she was being "overtasked or overworked" because (i) she was performing her team attorneys' workload for which she did not receive GCLaws credit; and, (ii) Plaintiff was consistently poor at entering her "billable time" in GCLaws.  Exhibit 3 at ¶10; PSOF ¶35.  Mr. Stacey admitted and recognized that Ms. Hall was not effective at entering her time in GCLaws.  *Id*.  In fact, Mr. Stacey recognized that it "was a challenge to get Ms. Hall to enter her time in the GCLaws and her notes were not – frequently were not contemporaneous with the effort… *Id*.  Use of GCLaws, of course, was a non-critical element in performance reviews.  Exhibit 4 at 56:1-7.

32. Plaintiff objects that Mr. Stacey allegedly "followed up" with Plaintiff because this alleged fact is not supported by a citation to the record.  LRCiv. 56.1. Plaintiff objects to the remainder as inadmissible hearsay.  FRE 801, 802.

33. Plaintiff objects to management's alleged efforts as not supported by a citation to the record and vague opinion.  LRCiv. 56.1. Plaintiff admits to the content of the e-mail and that she wrote it.

34. Plaintiff admits.

35. Plaintiff admits.

36. Plaintiff objects that an alleged "joint meeting" occurred because Defendant offers no citation to the record in support.  LRCiv. 56.1. Plaintiff denies that her time was "roped off" during the time period represented by Defendant.  Exhibit 1 at 187:22-25.  Plaintiff further denies the goal of the meeting because the "roped off" agreement occurred at a completely different time period.  *Id*.

37. Plaintiff admits except that her taskings did not merely include "maintaining CFD disclosures", which was a simple task, but running and supporting the entire CFD program, which was a full time task.  Exhibit 1 at 218:10-15.  Therefore, Plaintiff not only had to run and support the <u>entire CFD program</u>, but she also had to <u>draft a litigation report</u>, <u>draft an arbitration brief</u>, and <u>handle her entire caseload</u>, which included approximately <u>20 medical malpractice files</u> and <u>10 non-medical tort claims</u>.  DSOF ¶37.

38. Plaintiff admits Mr. Stacey <u>testified</u> to this effect, but Plaintiff denies this was the reason Ms. Hall was assigned to Phoenix facility because Ms. Devina Hughes, who replaced Ms. Hall after she resigned, was assigned to Phoenix as well even though she was only a GS-5 program paralegal.  *Supra*.

39. Plaintiff objects on the basis that DSOF ¶39 is based on documents that have not been shown to be genuine or authentic by a citation to deposition testimony or otherwise.  FRE 901.  Plaintiff further objects on the basis that the documents that are the basis of this alleged fact are filled with inadmissible hearsay and double hearsay.  FRE 801, 802.

40. Plaintiff objects to the alleged fact that Mr. Romaneski's "investigation was somewhat hampered" because Defendant does not cite to the record demonstrating there was an "investigation" or that Plaintiff allegedly "hampered" it.  LRCiv. 56.1. Without waiver of this objection, Plaintiff denies she never provided "written context."  Exhibit 3 at ¶11.  Plaintiff admits that on February 21, 2008, she refused to provide written follow up because of her desire to proceed formally in the EEO process.  *Id*.

41. Plaintiff objects on the basis that DSOF ¶41 is based on documents that have not been shown to be genuine or authentic by a citation to deposition testimony or otherwise.

FRE 901.  Defendant also relies on documents that contain inadmissible hearsay.  FRE 801, 802.  Plaintiff admits to her testimony.

42. Plaintiff admits Mr. Heck <u>testified</u> to this effect, but she denies this was the actual reason Mr. Heck made these offensive statements.  *See*, supra. (the reason for Mr. Heck communicating this to Plaintiff was to demonstrate that Phoenix is a white culture, and she should conform).

43. Plaintiff admits Mr. Romaneski <u>testified</u> to this effect, but again denies the basis for Mr. Heck's statement.  Supra.

44. Plaintiff denies the "roping off assignment" lasted a mere day as inferred by the February 15, 2008 date because the "roped off" period began well before February 14, 2008.  Exhibit 6 at 187:22-25.  Plaintiff objects to the e-mail because Defendant has not shown it is genuine or authentic by a citation to deposition testimony or otherwise.  FRE 901.  Without waiver of the objection, Plaintiff admits the content of the e-mail and states that she took work home with her, and she could not reasonably be expected to complete all tasks because she was continuing to take on Messrs. Heck's and Steinmetz's workload in addition to her own caseload and running the CFD program.  Exhibit 3 at ¶12.

45. Plaintiff objects that she allegedly had "escalating performance problems" because the citation Defendant gives does not support this alleged fact.  Plaintiff further objects that "Stacey" terminated Plaintiff's telecommuting agreement because this alleged fact is not supported by the Defendant's citation to the record (it was Mr. Romaneski).  Plaintiff further objects to the content of the documents referred to in DSOF ¶45 because they

have not been shown to be genuine or authentic by deposition testimony or otherwise, and the documents contain inadmissible hearsay. FRE 901, 801, 802. Without waiver of these objections, Plaintiff denies that she had "performance problems" because in Ms. Hall's mid-year review conducted on March 5, 2008, she was deemed by Mr. Stacey as "fully successful." Exhibit 2 at Hall.Va.04723-04724.

46. Plaintiff objects that her telecommuting did not immediately terminate because Defendant does not cite to the record. LRCiv. 56.1. Plaintiff objects to the remainder as referring to documents that have not been shown to be genuine or authentic by citation to deposition testimony or otherwise, and because the document referred to contains inadmissible hearsay. FRE 801, 802, 901. Without waiver of these objections, Plaintiff denies the substance because although Plaintiff's telecommuting continued for a short time following its official February 19, 2008 termination, the reason was because it was entered into VISTA and could not be deleted. Therefore, Ms. Hall had to complete the rotation for the pay period. Exhibit 3 at ¶13.

**Plaintiff objects to the Section III Heading to the extent that it is intended to be Statement of Fact on the basis that it is not supported by a citation to the record in violation of LRCiv 56.1.**

47. Plaintiff admits that she approached Mr. Romaneski with the N-word letters referenced, but she denies that Mr. Romaneski was "leaving the office" at the time she approached him. Exhibit 3 at ¶14. Mr. Romaneski refused to accept the N-word letters and advised Ms. Hall to present them to Mr. Stacey. DSOF ¶50.

48. Plaintiff admits.

49. Plaintiff admits.

50. Plaintiff admits that Mr. Romaneski instructed Ms. Hall to present the N-word letters to Mr. Stacey.  However, Plaintiff denies that an "investigation" occurred; rather, it was an inquiry only of Ms. Worth and her computer without speaking to other employees or specifically, Ms. Maxine Romero.  Exhibit 3 at ¶15.  Plaintiff further denies the reason for the inquiry was Ms. Worth's use of the N-word; rather, the inquiry was to reprimand her for use of governmental equipment for personal use.  Defendant's Ex. 23.  Plaintiff objects to the remainder as referring to documents that have not been shown to be genuine or authentic and which contains inadmissible hearsay.  FRE 801, 802, 901.

51. Plaintiff objects to Defendant's Exhibit 20 and the statements therein on the basis that said document has not been shown to be genuine or authentic by deposition testimony or otherwise.  FRE 901.  Plaintiff objects to Defendant's Exhibit 21 as not authentic and containing inadmissible hearsay.  FRE 801, 802, 901.

52. Plaintiff denies giving inconsistent statements as to how she found the N-word letters. Exhibit 3 at ¶16.  Plaintiff remained consistent and truthful in that the N-word letters were initially found "in/on the printer" (Plaintiff is unaware of the distinction between "in/on").  *Id*.  Several months prior to the facts giving rise to this claim, Ms. Romero found the same letters in/on the printer, which is what Ms. Hall had initially represented. *Id*.  Ms. Hall never represented that she, Ms. Hall, found them in/on the printer.  *Id*.  In fact, Ms. Hall communicated to management that she, Ms. Hall, found them in the shared P drive while she was looking for FedEx labels.  *Id*.  Plaintiff denies that she was ever confused or communicated that she was confused by "P drive" and "printer".  *Id*.

53. Plaintiff admits.

54. Plaintiff objects as to what "matter" was "investigated" as Ms. Hall claims that it was she, not Ms. Worth (author of N-word letters) who was being investigated due to management's attempt to classify Ms. Hall as one who either forged the N-word letters or lied as to where the N-word letters were found. Additionally, Defendant does not cite to the record to support an alleged "investigation" into a "matter." LRCiv. 56.1. Without waiver of these objections, Plaintiff admits that management never spoke with Ms. Romero who was the person who originally found the N-word letters "in/on the printer." Supra.

55. Plaintiff objects to DSOF ¶55 because it is supported by a document that has not been shown to be genuine or authentic by deposition testimony or otherwise, and it contains inadmissible hearsay. FRE 801, 802, 901.

56. Plaintiff denies. Plaintiff found the letters in Ms. Worth's portion of the shared P drive, and there was no designation of "Sean's Letter" and there was no designation for "Federal Express Labels." Exhibit 3 at ¶17.

57. Plaintiff admits Ms. Worth was reprimanded, but denies she was reprimanded for use of the N-word; rather, she was reprimanded for personal use of government equipment. Defendant's Exhibit 23.

**Plaintiff objects to the Section IV Heading to the extent that it is intended to be Statement of Fact on the basis that it is not supported by a citation to the record in violation of LRCiv 56.1.**

58. Plaintiff admits.

59. Plaintiff admits.

60. Plaintiff denies that she had "several" interviews with the FBI after it made a conditional offer of employment to her. Exhibit 3 at ¶18. After the FBI made a conditional offer of employment, Ms. Hall had one additional pre-background screening interview and one polygraph examination. *Id.* Plaintiff admits the remainder.

61. Plaintiff objects to DSOF ¶61 on the basis that the document referred has not been shown to be genuine or authentic via affidavit, deposition testimony or otherwise. FRE 901. Plaintiff further objects on the basis that the document referred contains inadmissible hearsay. FRE 801, 802.

62. Plaintiff admits she received a letter from the FBI but states she received it in late May of 2008. Exhibit 3 at ¶19.

63. Plaintiff admits that the letter referenced was the only *written* correspondence she received concerning the withdrawal of the conditional offer of employment. Plaintiff had several telephonic conversations with the FBI and its agents after her receipt of the correspondence. Exhibit 3 at ¶20.

64. Plaintiff admits.

65. Plaintiff admits.

66. Plaintiff objects to DSOF ¶66 on the basis that it is based on a document that has not been shown to be genuine or authentic by affidavit, deposition testimony or otherwise. FRE 901. Plaintiff further objects as the document referred contains inadmissible hearsay. FRE 801, 802.

67. Plaintiff objects on the basis that ¶66 is based on a document that has not been shown to be genuine or authentic by affidavit, deposition testimony or otherwise. FRE 902.

Plaintiff further objects to the referred document as containing inadmissible hearsay. FRE 801, 802. Plaintiff further objects on the basis that the citation given by the Defendant does not support the alleged fact represented. LRCiv. 56.1. Without waiver of these objections, Plaintiff denies she failed the polygraph test in question because she was informed by Ms. Lynn Poindexter of the FBI that because she completed the polygraph test that meant she did not fail. Exhibit 3 at ¶21. Plaintiff further adds that her claim of interference with prospective employment is not limited to the FBI employment. *Id*. Doc. 1.

**Plaintiff objects to the Section V Heading to the extent that it is intended to be Statement of Fact on the basis that it is not supported by a citation to the record in violation of LRCiv 56.1.**

68. Plaintiff admits but denies any inference that February 21, 2008 was the *first* date management became aware of the EEO claim as unsupported by the citations to the record. LRCiv. 56.1.

69. Plaintiff admits but denies that the term "settlement" as she used it was in reference to any formal settlement offer in legal terms. Exhibit 3 at ¶22. In fact, Ms. Hall declined participation in ADR/mediation with ORM. *Id*. Pursuant to VA regulations, settlement is initiated by an Agreement to Mediate and No Confidentiality Agreement. *Id*. Mediation and settlement cannot be initiated by or directly with the Responsible Management Officials, which in this case is Messrs. Hutter, Hogan, Romaneski and Stacey. *Id*. Furthermore, Plaintiff requested transfer and/or reassignment on February 13, 2008 for the first time, which was well before any formal or informal EEO activity. PSOF ¶31.

70. Plaintiff objects on the basis that the document supporting DSOF ¶70 has not been shown to be genuine or authentic by deposition testimony or otherwise. FRE 902. Without waiver of the objection, Plaintiff reiterates her controverting statements as stated in ¶69, supra.

71. Plaintiff admits and reiterates her controverting statements as stated in ¶69, supra.

72. Plaintiff admits.

**Plaintiff objects to the Section VI Heading to the extent that it is intended to be Statement of Fact on the basis that it is not supported by a citation to the record in violation of LRCiv 56.1.**

73. Plaintiff objects on the ground that DSOF ¶73 is unintelligible ("In and around March 2008, as it appeared to management that Plaintiff would be departing to work for the FBI"). Without waiver of the objection, Plaintiff admits that on or around March 5, 2008 management became aware that Ms. Hall received a conditional offer of employment from the FBI. Exhibit 6 at 239:9-15.

74. Plaintiff admits.

75. Plaintiff admits.

76. Plaintiff admits, but denies that he testified the process has "no nuanced way to rate an employee." In actuality, Mr. Stacey testified as follows:

```
[1] I would say at the mid-year, the primary line of
[2] demarcation is Fully Successful or Less Than Fully
[3] Successful. That's what the form contemplates and that's
[4] the primary line of demarcation. I don't believe there's
[5] anybody who does not have some room for improvement. So I
[6] think everybody can -- me included, can use, you know, some
[7] tips on how to improve. So I think everybody would be
[8] worthy of some discussion on how to improve, but I don't
[9] know that that's memorialized, it's not. But the primary
```

```
[10]  line of demarcation at the mid-year is Less Than Fully
[11]  Successful I think is the term of art that's used on the --
[12]  on the performance appraisal form, or Fully Successful.
```

Exhibit 6 at 28:1-12.

77. Plaintiff objects on the basis that DSOF ¶77 refers to a document that has not been shown to be genuine or authentic by deposition testimony or otherwise, and the document contains inadmissible hearsay.  FRE 801, 802, 901.

78. Plaintiff objects on the basis that DSOF ¶78 refers to a document that has not been shown to be genuine or authentic by deposition testimony or otherwise, and the document contains inadmissible hearsay.  FRE 801, 802, 901.

79. Plaintiff admits and states the reason for her declining the Rafilson assignment was because she had completed it several months prior.  PSOF ¶20, 26.

80. Plaintiff admits Mr. Heck <u>testified</u> to this alleged fact, but she denies she failed to submit CFD updates in a timely manner as it was a relatively simple task.  Exhibit 3 at ¶23.

81. Plaintiff denies her performance was poor in light of the fact that a mere seven calendar days earlier she had a "fully successful" rating on her mid-year performance review.  Infra.  Plaintiff denies that she was confrontational with Mr. Romaneski; rather, she inquired as to the basis of the reprimand in light of the fact she had received a "fully successful" rating a mere week earlier.  *Id*.  Plaintiff admits that Mr. Romaneski attempted to give her a reprimand on March 12, 2008.

82. Plaintiff admits.

83. Plaintiff admits that Mr. Kaping testified that she heard Ms. Hall allegedly make the statement, and Plaintiff admits that she denies ever making said statement.  Plaintiff

denies an "investigation" occurred into the alleged statement because Mr. Stacey never inquired of Plaintiff whether she made the statement. PSOF ¶14.

84. Plaintiff admits, but denies the Court dismissed the use of the denial of WIGI as contributing to her constructive discharge.

85. Plaintiff admits that she resigned by correspondence dated June 6, 2008.

### III.    PLAINTIFF'S SEPARATE STATEMENT OF FACTS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

1. Ms. Maxine Romero, a staff attorney in Region 19, admits there is no proper context for the use of the N-word. Exhibit 7 at 113:18-22.

2. Ms. Maria Worth expressed that she did not appreciate being treated as one of the letter's receipient's "nigger friends." Exhibit 2 at Doc. 1-5. Indeed, Ms. Worth chastised the recipient of the letter for being treated like a "nigger friend" of his. *Id*.

3. Defendant was extremely offended at Ms. Worth's use of the N-word:

> Q.  At the time you viewed the letter that was composed by Ms. Worth, which I believe is Exhibit Number 17, in which the N word is used, how did that make you feel?
>
> A.  It made me feel **inferior**.  It made me feel like I was **not respected** because no action was taken.  It made me feel like I was **not human**, like I was **subhuman**.

Exhibit 1 at 347:15-22.

4. Ms. Hall found the letters containing the N-word while looking for FedEx labels on Maria Worth's portion of the shared P drive. Upon discovery of the letters, Ms. Hall confided in Ms. Romero. Exhibit 3 at ¶16. Employees in Region 19 know that the

shared P drive was available to anyone within Region 19, and employees were permitted to access other employees' folders within the P drive.  Exhibit 5 at 144:7-21.

5.   Mr. Romero provided Ms. Hall with actual hard copies of the letters, *Id*., which she herself had discovered in the printer several months prior to Ms. Hall's discovery of the letters on the P drive.  Exhibit 7 at 108:2-112:22.

6.   In fact, several employees within Region 19 were aware that Ms. Worth had drafted the letters during government time well prior to Ms. Hall's discovery of them, and that Ms. Worth consistently slept at her desk and during staff meetings.  Exhibit 7 at 108:2-112:22.

7.   When Ms. Romero discovered the letters well prior to Ms. Hall's discovery, she had presented them to management.  *Id*.

8.   In a meeting at which Mr. Romaneski was attempting to present Ms. Hall with the March 12, 2008 reprimand, Ms. Romero personally clarified to Mr. Romaneski that indeed she (Romero) had found the letters in the printer.  *Id*. at 134:17-137:12.

9.   But when Ms. Romero had presented to Mr. Romaneski the letters months prior to Ms. Hall's presentment, Mr. Romaneski did not take any action because he believed Ms. Romero was on a "witch hunt."  In fact, employees within Region 19 entertained the notion that Mr. Romaneski protects Region 19 Caucasian employees when he is presented with their detrimental work performance or other deficiencies.  *Id*. at 131:3-13.

10. Ms. Hall felt in relation to management's investigation into her:

    Specifically, what brought to mind it is based on race is when I became aware of the letter containing the word "nigger", and the response to that was not a

```
concern  for  me  or  my  feelings  in  finding  that  and
reading that word.  It was more how I came about it and
how I attempted to discredit the author of that letter.
```

Exhibit 1 at 210:17-23.

11. During Ms. Hall's employment, Mr. Dana Heck told her that Phoenix is a white city inferring that Ms. Hall "would have to get used to the culture in Phoenix and that Phoenix is a largely white city…" *Id.* at 270:1-271:13.

12. Ms. Hall was issued a memorandum of March 21, 2008 in which her Within Grade Increase Was Denied.  Exhibit 2 at Hall.VA 02176-79.

13. At no time, whether at her place of employment or personal life, has Ms. Hall ever said that someone, including Mr. Heck, can kiss her black ass.  Exhibit 3 at ¶24.  Ms. Romero has never heard Ms. Hall ever use insulting language or racially insensitive remarks at the workplace, and she described Ms. Hall as conscientious of her surroundings.  Exhibit 7 at 140:24-141:18.  Mr. Jeremy Yubeta, Ms. Hall's current supervisor at the Equal Employment Opportunity Commission, has never heard Ms. Hall use offensive language at the workplace, and he describes her as a good, genuine, hard-working person who does not make excuses.  Exhibit 8 at 8:10-15, 9:9-15, 17:8-10, 22:2-11.

14. Mr. Jeffrey Stacey never personally verified with Ms. Hall as to whether she made the "black ass" statement prior to issuance of the reprimand or denial of the WIGI.  Exhibit 6 at 150:24-151:1, 153:11-16.

15. The basis for the reprimand was that he believed Ms. Kaping and because he thought Ms. Hall failed to deny making the statement in her Response to the Reprimand:

```
Ms. Hall did not deny it, she sort of parsed around it
and she said she didn't use it in an official capacity,
and I believe she said she didn't use it towards
anybody in the office.  That's not the same as denying
it, and in fact, that's - that's admitting - admitting
it was said.
```

*Id*. at 147:15-148:5.

16. Ms. Hall did in fact deny making the statement in her April 7, 2008 Response to the Reprimand in which she elucidates the fact that she was unaware of this accusation until she received the Reprimand itself.  Exhibit 2 at Hall.Va.04288-04293.

17. Although management never personally verified with Ms. Hall whether she made the "black ass" statement prior to issuance of the reprimand, management did verify with Mr. Heck – a Caucasian - as to whether he ever made the "Phoenix is a white city" comment because management wanted to get to the bottom of whether he actually made the statement.   Exhibit 6 at 228:4-230:15.

18. The denial of WIGI is a disciplinary action.  Exhibit 7 at 97:22-24.  Furthermore, the factual basis for the denial of Ms. Hall's WIGI and the reprimand were the exact same. Exhibit 6 at 291:6-18.

19. Ms. Hall always provided timely CFD updates to Mr. Dana Heck.  Exhibit 3 at ¶23. Indeed, providing CFD updates was one of the more simple jobs Ms. Hall had as opposed to running the entire CFD program.  *Id*.  On the one hand she merely had to provide updates on the CFD program, while on the other hand she had to actually run the entire CFD program. *Id*.

20. In or around late January 2008, Ms. Hall completed a litigation report in the Ned Rafilson litigation, which was provided to the AUSA Peter Lantka for his preparation of an Answer to the Rafilson Complaint. *Id*. at ¶25; Exhibit 7 at 69:2-71:14; Exhibit 6 at 91:11-21, 93:14-25, 235:5-15; Exhibit 2 at HALL 480-483.

21. A litigation report is a document provided to the AUSA that summarizes the facts of the case, procedural history at the administrative stage, identifies persons for a Rule 26 Disclosure, and proposes denials and admissions for an Answer. Exhibit 7 at 72:2-13.

22. It is uncommon for an AUSA to request two litigation reports, especially one well into the litigation, because its purpose is to provide the AUSA with background and proposed answers to the initial Complaint. *Id*. at 72:2-13.

23. Litigation reports are "virtually always" produced by Region 19 to the AUSA early in the litigation because they are used in drafting the Answer. Exhibit 6 at 88:2-4, 88:25-89:12.

24. Ms. Maxine Romero, a Defendant staff attorney, found it unusual that Ms. Hall was asked to work on a litigation report in Rafilson litigation "that seemed to have gone out already." Exhibit 7 at 14:16-20, 72:16-25.

25. Prior to the due date of the Rafilson project, Ms. Hall advised Mr. Stacey that she was "not sure" that she could get it to him on time. Exhibit 2 at Hall.Va 04904. Mr. Stacey interpreted Ms. Hall's e-mail as saying "I don't know if I can get it done by the 10th." Exhibit 6 at 222:6-223:7.

26. In fact, Ms. Hall had also indicated that she would decline the Rafilson assignment. Exhibit 2 at Hall.Va.05677; Exhibit 6 at 249:19-250:23. Indeed, she declined the assignment because she had completed it already. Exhibit 3 at ¶26. Messrs. Romaneski

and Stacey both knew that Ms. Hall declined the Rafilson assignment. Exhibit 6 at 249:19-250:24.

27. There was an "extreme inequity" in workload between the two Phoenix paralegals Ms. Kaping and Ms. Hall. Exhibit 7 at 92:2-7. Indeed, Ms. Romero testified that she was not receiving the same amount of paralegal support from Ms. Kaping that Mr. Heck was receiving from Ms. Hall. Id. at 9:23-10:23. Ms. Romero complained to management that she was not receiving the support she required from Ms. Kaping, but the latter was still permitted to work independently. Id. at 57:2-58:1.

28. After Ms. Hall's resignation, she was replaced by Ms. Devina Hughes – another African American – who was a GS-5 paralegal. Id. at 94:3-5; Exhibit 6 at 200:19-22. Ms. Hughes supported the same two attorney team and medical facilities that Ms. Hall had supported. Exhibit 5 at 97:20-98:16. Even though Mr. Stacey testified that a person's skill sets were the primary consideration when assigning them to teams, and even though Phoenix was the busiest medical facility, he assigned Ms. Hughes to the Phoenix team, and she was only a GS-5 paralegal. Exhibit 6 at 201:19-202:10.

29. Ms. Devina Hughes often complained of the same disparity in workload between herself and Ms. Kaping, and Ms. Romero observed the disparities. Exhibit 7 at 92:13-25. The disparity in workload was so severe for Ms. Hughes that she often cried in the workplace. Id. at 93:17-94:2. No other paralegals within Region 19 complained of a disparity in workload other than African American paralegals. Id. at 94:9-12.

30. Mr. Romaneski testified that Ms. Hughes ultimately resigned due to a hostile work environment. Exhibit 9 at 29:11-16. Ms. Kaping confirmed that Ms. Hughes resigned as well. Exhibit 5 at 96:16-97:7.

31. Plaintiff first requested to be transferred to a new attorney team and away from the Dana Heck team on February 13, 2008, which was two days prior to Ms. Hall taking any formal or informal EEO action. Exhibit 6 at 114:6-14; Exhibit 3 at ¶27; Exhibit 2 at Hall.VA.04703. Although Plaintiff requested a transfer on several occasions, at no time did Messrs. Romaneski or Stacey communicate with Ms. Kaping concerning her amenability to switching places with Ms. Hall such that Ms. Kaping would then support Messrs. Steinmetz and Heck, and Ms. Hall would support Ms. Romero and Ms. Lige. Exhibit 5 at 119:1-22.

32. There was an "extreme inequity" between the workloads of Ms. Hall and Ms. Kaping. Exhibit 7 at 92:2-7.

33. While Ms. Hall was a paralegal in Region 19, she and Ms. Kaping were the only paralegals in the Phoenix office. Each of them was assigned to a two-attorney team, and each were expected to provide support to two VA medical facilities. Exhibit 3 at ¶4.

34. After Ms. Hall's resignation, Ms. Kaping was permitted to work independently and not provide any attorney support. Exhibit 7 at 26:7-23. This restructuring occurred at a time when the Region 19 workload was equally as heavy as when Ms. Hall was working in Region 19. *Id.* at 56:7-20. Ms. Kaping confirmed that the workload has remained the same in Region 19 between the relevant time frame and currently. Exhibit 5 at 80:11-15. She also confirmed that she is in an independent role now and even though she is

independent and the workload in Region 19 is the same, Region 19 is functioning, producing and is efficient. *Id.* at 88:11-22.

35. Ms. Hall's utilization of GC Laws during the relevant time period was marginal. Exhibit 6 at 54:17-19. In fact, Mr. Stacey recognized that it "was a challenge to get Ms. Hall to enter her time in the GCLaws and her notes were not – frequently were not contemporaneous with the effort…" Id. at 54:17-24.

36. Ms. Hall requested on February 13, 2008 that she be transferred to a new attorney team, and more specifically away from the Dana Heck attorney team. Exhibit 2 at *Id.*; Exhibit 6 at 110:18-25.

37. On March 5, 2008, Ms. Hall received a mid-year review, which was marked as "fully successful or better." Exhibit 2 at 04723-24. Mr. Stacey was the rater and testified that as of March 5, 2008, Ms. Hall's performance was "fully successful or better." Exhibit 6 at 64:8-66:4.

38. Mr. Stacey claims that although he designated Ms. Hall's performance as fully successful on March 5, 2008, he outlined a number of areas where she could improve. However, this alleged outline was never memorialized in a writing, *Id.* at 275:16-276:9, and the means to bring an employee to full performance would be to initiate a performance improvement plan. *Id.* at 26:17-27:3.

39. And even though Ms. Hall's performance did not allegedly become less than fully successful until March 21, 2008 (16 days after fully successful rating), *Id.* at 286:6-9, Mr. Stacey testified he began to draft the reprimand on March 6 or 7, *Id.* at 273:1-274:6, and the reprimand was dated on March 12, 2008. Id. at 273:18-19.

40. Strangely, even though Ms. Hall resigned on June 6, 2008, supra, Mr. Stacey issued Ms. Hall a performance improvement plan on June 10, 2008 and additionally issued a performance review tagging her as "unsatisfactory." Id. at 294:21-295:2, 295:10-296:23. A true and correct copy of Exhibits 61 of the Stacey Deposition (the PIP and performance review) are attached in Exhibit 2 at Hall.VA.04720-04726.  Exhibit 6. at 297:5-298:16.

41. At the EEOC, Ms. Hall has never turned in an assignment or report in an untimely manner.  Exhibit 8 at 17:2-5.

42. While employed at the EEOC, Ms. Hall has not complained of disparate treatment or inequality of work distribution; in fact, Ms. Hall has advised Mr. Yubeta that she desires a greater workload.  Id. at 22:12-23:3.


RESPECTFULLY SUBMITTED this 2nd Day of September, 2010.


**THE STROJNIK FIRM LLC**


*/s/ Peter Kristofer Strojnik*
Peter Kristofer Strojnik
Bank of America Tower
3030 North Central Avenue
Suite 1401
Phoenix, Arizona 85012
Attorney for Plaintiff Vanessa Hall