**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vanessa Hall, | No. CV-09-0837-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Erick K. Shinseki, Secretary, United States Department of Veterans Affairs, | |
| Defendant. | |

Plaintiff Vanessa Hall brings this employment discrimination action against defendant, the United States Department of Veterans Affairs. We have before us defendant's motion for summary judgment (doc. 72), plaintiff's response and cross-motion for partial summary judgment (docs. 81 and 82), and defendant's reply (doc. 85).

**I. Background**

Plaintiff is an African American woman who worked for defendant as a paralegal. She began working in the Phoenix office on October 1, 2007, but alleges that after a few months she began to notice disparities between her workload and that of Norma Kaping, a Caucasian paralegal. Plaintiff raised the issue of her heavier workload but defendant refused to transfer her to another attorney team and instead tried to assist her in time management. Plaintiff's allegations of harassment center around the use of derogatory language by a co-worker, Maria Worth, racial comments made by the attorney she worked for, Dana Heck, and

defendant's refusal to transfer her. Subsequently, plaintiff began to seek employment elsewhere, including with the Federal Bureau of Investigation ("FBI"). In early March 2008, plaintiff informed defendant that the FBI had extended her a conditional offer of employment.

On March 12, 2008, plaintiff requested a leave of absence. Defendant agreed, but asked plaintiff to remain until she completed pending assignments. On March 21, 2008 defendant issued plaintiff a letter of reprimand and denial of her "within grade" pay increase because of deficiencies in her work performance and inappropriate conduct. On March 22, 2008, plaintiff filed a complaint of retaliation under Title VII with defendant's EEO Manager. Shortly thereafter, plaintiff received notice that the FBI had rescinded its employment offer. Plaintiff then asked defendant to transfer her to its District of Columbia office, but defendant denied the request citing position unavailability. As a result, on June 4, 2008 plaintiff filed another complaint of retaliation and race discrimination with defendant's EEO counselor. Finally on June 6, 2008 plaintiff resigned, claiming constructive discharge.

Plaintiff filed this action alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, on April 21, 2009. Plaintiff asserted many claims of discrimination and retaliation but we dismissed all but three: (1) failure to reassign, (2) constructive discharge, and (3) interference with employment opportunity. See doc. 29 (dismissing all other claims). Defendant moves for summary judgment on all remaining claims.

## II. Disparate Treatment

Defendant first argues that plaintiff fails to show sufficient evidence of disparate treatment on account of her race. In Title VII cases we apply the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Plaintiff bears the initial burden to show a prima facie case of discrimination, which defendant may then rebut by providing a legitimate, nondiscriminatory reason for the disparate treatment. Chuang v. Univ. of California, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000). If defendant provides such a reason, plaintiff must establish that defendant's reason is a pretext for discrimination.

1  Id. Plaintiff may do so either "directly by persuading the court that a discriminatory reason
2  more likely motivated the employer or indirectly by showing that the employer's proffered
3  explanation is unworthy of credence." Texas Dept. of Comm. Affairs v. Burdine, 450 U.S.
4  248, 256 , 101 S. Ct. 1089, 1095 (1981).  Indirect evidence must be specific and substantial,
5  but need not be more or better than direct evidence. Cornwell v. Electra Cent. Credit Union,
6  439 F.3d 1018, 1030-31 (9th Cir. 2006).

7  To establish a prima facie case of disparate treatment plaintiff must demonstrate that:
8  (1) she belongs to a protected class; (2) she is qualified for her position; (3) she was subject
9  to an adverse employment action; and (4) similarly situated individuals outside plaintiff's
10 protected class were treated more fairly. See Chuang, 225 F.3d at 1123. Defendant disputes
11 plaintiff's ability to prove elements three and four.

12 First, because denial of a transfer can be adverse, plaintiff was subject to an adverse
13 employment action when defendant denied her request to transfer to another attorney team.[1]
14 See Nat'l. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002);
15 Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1491-92 (9th Cir. 1995).

16 Second, defendant argues only that Norma Kaping was not similarly situated because
17 she had less education, was on a lower pay grade, was funded through a different pay
18 scheme, had a different title, and had fewer high level skills.[2] Defendant does not address
19 the "treated more fairly" component of the fourth element. Plaintiff, on the other hand,
20 argues that Norma Kaping was similarly situated because she and plaintiff "were both
21 paralegals working on a two-man staff attorney team, supporting two medical facilities, and
22 they were the only paralegals in the Phoenix office." Response at 15. Whether two
23 employees are similarly situated is ordinarily a question of fact. Beck v. United Food and

---

[1] Plaintiff appears to have abandoned her claim based on a denial of transfer to Washington D.C. as she does not address it in her response.

[2] We note that plaintiff originally claimed Maria Worth, a lower-paid receptionist, was also a comparable employee, but abandoned Worth as a comparable employee in her response.

1  Commercial Workers Union, 506 F.3d 874, 885 (9th Cir. 2007). Here, plaintiff and Norma
2  Kaping were similarly situated in all material respects because they had almost identical jobs,
3  they were the only two paralegals in the office, and they engaged in similar conduct by
4  supporting two-man attorney teams and medical facilities. See Vazquez v. Cnty. of Los
5  Angeles, 349 F.3d 634, 641 (9th Cir. 2003); see also Aragon v. Republic Silver State
6  Disposal Inc., 292 F.3d 654, 660 (9th Cir. 2002) (concluding individuals with positions of
7  "roughly equivalent rank" were similarly situated). Because defendant argues only the
8  comparability issue, and does not address the "treated more fairly" issue, we assume without
9  deciding that plaintiff has met her minimal burden of establishing a prima facie case.

10  However, defendant has proffered a legitimate, non-discriminatory reason for its
11  decision not to transfer plaintiff. Defendant argues it refused to transfer plaintiff to another
12  team because (1) Phoenix was the busiest office and required a GS-12 paralegal and (2)
13  management's investigation into plaintiff's actual workload revealed that she was not
14  overworked in comparison to other paralegals in the region. Defendant has met its burden
15  of production and therefore plaintiff must show that defendant's reason is pretext.

16  Plaintiff has offered no direct evidence that defendant was motivated by
17  discriminatory intent, but attempts to establish pretext through circumstantial evidence. In
18  particular, plaintiff relies on the fact that Norma Hughes, a GS-5 African American paralegal,
19  replaced plaintiff, as well as management's knowledge that plaintiff did not keep accurate
20  time records. We agree with plaintiff that evidence regarding her replacement is sufficient
21  to establish pretext at least for defendant's first nondiscriminatory reason. The fact that a GS-
22  5 paralegal replaced plaintiff discredits defendant's stated reason for refusing transfer because
23  the Phoenix office "required" a GS-12 paralegal. A reasonable jury could conclude that the
24  stated need for a GS-12 is unworthy of credence.

25  Nevertheless, plaintiff has failed to offer sufficient evidence to rebut defendant's
26  second nondiscriminatory reason. Plaintiff argues that because defendant knew plaintiff did
27  not accurately record her time, it could not have reasonably concluded plaintiff was not
28  overworked. Defendant, however, does not merely rely on plaintiff's recorded time as the

basis for its decision. Defendant investigated plaintiff's overall caseload and determined that the average regional caseload for paralegals was 17.3 and plaintiff's was only 14 and that plaintiff also had an average caseload for medical malpractice cases. DSOF ¶ 31, ex. 10. Plaintiff fails to offer any additional evidence to contradict this. Plaintiff's evidence in support of her prima facie case consisted only of her own conclusory allegations and the deposition of one attorney who thought Norma Kaping did not provide enough attorney support. This evidence does not create a genuine issue of material fact regarding the truth of defendant's proffered reason. Furthermore, the overall record demonstrates that defendant made many efforts to assist plaintiff in better time management, given that her caseload was no more than any other paralegal. Plaintiff's reliance on her own inability to maintain accurate time records fails to demonstrate defendant's reason is unworthy of credence. Therefore, because plaintiff has not provided sufficient evidence to raise an issue of material fact from which a reasonable jury could find that defendant's refusal to transfer plaintiff was based on race, we grant defendant's motion for summary judgment on plaintiff's disparate treatment claim.

### III. Constructive Discharge

Plaintiff alleges that she was constructively discharged because: (1) there was a hostile work environment that compelled her resignation and (2) she was treated less favorably than Norma Kaping and Maria Worth.[3] Defendant, on the other hand argues that plaintiff fails to raise any issue of material fact as to whether her working conditions were so intolerable that any reasonable person would have resigned.

"[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent diligent, and reasonable employee to remain

---

[3] Since we already concluded that Norma Kaping is a similarly situated employee for purposes of plaintiff's disparate treatment claim, we reject defendant's argument that plaintiff's constructive discharge claim similarly should fail due to a lack of comparable employees.

- 5 -

1   on the job." Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000). A prima facie
2   case for constructive discharge requires "something more" than actionable discrimination.
3   Pennsylvania State Police v. Suders, 542 U.S. 129, 147, 124 S. Ct. 2342, 2354 (2004); see
4   also Poland v. Chertoff, 494 F.3d 1174, 1184 (9th Cir. 2007) (stating that "[w]e set the bar
5   high for a claim of constructive discharge"). Plaintiff must show "some aggravating factors,
6   such as a continuous pattern of discriminatory treatment." Schnidrig v. Columbia Mach.,
7   Inc., 80 F.3d 1406, 1411 (9th Cir. 1996).

8   Plaintiff first argues she was constructively discharged because she was subjected to
9   a hostile work environment. To establish a hostile work environment claim under Title VII,
10  plaintiff must prove that the alleged conduct was sufficiently pervasive and severe as to alter
11  the conditions of her employment and create an abusive work environment. Manatt v. Bank
12  of Am., 339 F. 3d 792, 798 (9th Cir. 2003). Plaintiff relies on three main incidents to support
13  her claim: (1) Maria Worth's use of the term "nigger" in a personal letter to Worth's son
14  which plaintiff found; (2) offensive comments by staff attorney Dana Heck; and (3)
15  defendant's discipline of plaintiff for poor work performance.

16  While it is obvious that the use of the word "nigger" is highly offensive and
17  demeaning, the insult was not directed at plaintiff. See Kortan v. California Youth Auth.,
18  217 F.3d 1104, 1110 (9th Cir. 2000) (finding that despite the unpleasantness of certain sexual
19  insults, because "they were about other people . . . [and] never directed at" plaintiff, they
20  were not actionable under Title VII).[4] Maria Worth used the term in a letter written to her
21  son. Plaintiff somehow found the letter. While management's reaction to the incident might
22  have been more sympathetic, it did reprimand Maria Worth within thirteen days of plaintiff's
23  reporting the incident. Because the letter was not directed at plaintiff it is not evidence of a

---

[4] We note that "discriminatory conduct directed at an individual other than the plaintiff may be relevant to a plaintiff's hostile work environment claim in certain circumstances." Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1123 (9th Cir. 2008). However, those circumstances exist when the plaintiff personally witnessed the harassment, rather than learning about it indirectly. Id. Here, plaintiff indirectly stumbled upon the letter containing the discriminatory remark. Therefore, it is not relevant to her claim.

- 6 -

hostile work environment.

Second, the alleged racial comments made by Dana Heck, when put in context, are not sufficiently harassing to demonstrate a hostile work environment warranting a constructive discharge. The Court of Appeals for the Ninth Circuit has held that "no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino." Vasquez, 349 F.3d at 634 (citing Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir. 1990)); see also Kortan, 217 F.3d 1104 (finding no Title VII liability even when the supervisor, on several occasions, called female employees "castrating bitches," among other things). Here, the comments complained of are: (1) "better you than me;" (2) "his tastes run from petite white women to fat black women;" (3) "if it were up to me you wouldn't be telecommuting;" and (4) "Phoenix is a largely white city." DSOF ¶ 41. Such comments do not even come close to the seriousness of the those in Sanchez, Vasquez, or Kortan. Furthermore, plaintiff's testimony as to the context of the statements demonstrates that they were hardly harassing. Id. (citing to plaintiff's deposition explaining each context).

Finally, defendant's letter of reprimand and denial of plaintiff's "within grade" pay increase ("WIGI") do not amount to a constructive discharge because the record does not suggest these actions occurred because of plaintiff's race.[5] See Hardage v. CBS Broad., Inc., 427 F.3d 1177, 1184-85 (9th Cir. 2005) (finding that the issuance of adverse performance memoranda did not amount to a constructive discharge); see also Brooks, 229 F.3d at 930 (noting that constructive discharge must occur "as a result of discrimination").

Plaintiff alleges she was disciplined twice based on false accusations and a failure to complete timely assignments in retaliation for her pursuing an EEO claim. PSOF, ex. 2 at

---

[5] The factual basis for the denial of WIGI and the reprimand were the same. PSOF ¶ 18.

1  18. Even assuming the basis for the letter of reprimand and denial of WIGI was false, in the
2  context of this case, neither rise to the level of constructive discharge. See Luox v. Marie,
3  337 F.App'x. 695, * 1 (9th Cir. 2009) (concluding that the issuance of two reprimands after
4  the plaintiff complained of sexual harassment did not amount to a constructive discharge).
5  The letter of reprimand contained eighteen separate paragraphs outlining problems with
6  plaintiff's work performance and conduct, and did not, as plaintiff claims, focus solely on the
7  investigation into how she discovered Maria Worth's letters or the alleged racial comment
8  plaintiff made. DSOF, ex. 34. Furthermore, the record does not support plaintiff's claim that
9  she was "wrongfully investigated" for how she discovered the letters. Response at 5-7. The
10 communications between plaintiff and defendant after she discovered the letters show that
11 defendant was reasonably trying to identify the circumstances leading to the discovery.
12 DSOF, ex. 19. Furthermore, the record demonstrates that plaintiff was struggling with her
13 workload and that defendant tried hard to help her. DSOF ¶¶ 31, 32, 36, 37, 44, 45. Plaintiff
14 does not deny that she failed to produce a satisfactory second litigation report as alleged in
15 her letter of reprimand. Nor does she provide any concrete evidence to link defendant's
16 actions with racial discrimination. Finally, there were internal dispute mechanisms for both
17 the letter of reprimand and the denial of WIGI. Plaintiff cannot just resign and complain that
18 conditions were so intolerable where she had the opportunity to seek review and failed to do
19 so. See Poland, 494 F.3d at 1184 (stating that there is a high bar for constructive discharge
20 claims because "federal antidiscrimination policies are better served within their existing
21 employment relationship, rather than when the employee walks away and then later
22 litigates").

23  Finally, because we find that plaintiff's disparate treatment claim fails as a matter of
24 law, we similarly conclude that the allegations of disparate treatment cannot support a claim
25 of constructive discharge.

26  Therefore, "looking at the totality of circumstances, a reasonable person in [plaintiff's]
27 position would [not] have felt that [s]he was forced to quit because of intolerable and
28 discriminatory working conditions." Hardage, 427 F.3d at 1184. Accordingly, we grant

- 8 -

defendant's motion for summary judgment on plaintiff's constructive discharge claim.

## IV. Interference with Employment Opportunity

Plaintiff's final claim under Title VII asserts that defendant retaliated against plaintiff by interfering with her conditional offer of employment with the FBI. Complaint ¶ 220. Defendant contends that plaintiff failed to produce any evidence that any employee of defendant had any contact with FBI personnel regarding plaintiff's employment application, much less interfered with that process. Plaintiff neither rebuts defendant's contention nor offers any evidence to support her claim. Furthermore, she fails to refute defendant's offer of the FBI document linking her polygraph test results to the FBI's denial of her employment. DSOF, ex. 24. Accordingly, we also grant defendant's motion for summary judgment on that claim.

Therefore, **IT IS ORDERED GRANTING** defendant's motion for summary judgment on all claims (doc. 72).

**IT IS FURTHER ORDERED DENYING** plaintiff's cross motion for partial summary judgment both for the reasons stated above and because it was untimely (docs. 81 and 82).[6]

DATED this 4th day of November, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

---

[6] The deadline for filing dispositive motions closed on August 3, 2010 and we previously denied plaintiff's motion to extend that deadline on July 29, 2010 (docs. 18 and 71). Plaintiff did not file the cross-motion until September 2, 2010, well past the deadline.